1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ERIC PERKINS,

11            Petitioner,                    No. CIV S-08-0495 LKK CHS P

12        vs.

13   D.K. SISTO, et al.,

14            Respondents.        FINDINGS AND RECOMMENDATIONS

15   _____/

16                          I.  INTRODUCTION

17            Petitioner Eric Perkins is a state prisoner proceeding pro se with a petition for writ

18   of habeas corpus pursuant to 28 U.S.C. §2254.  He is currently serving a sentence of 10 years and

19   four months, plus life with the possibility for parole, following convictions in the Alameda

20   County Superior Court for various offenses relating to the kidnaping and assault of a drug debtor.

21   Petitioner does not challenge the propriety of his conviction; rather, he challenges the 2007

22   decision of the Board of Parole Hearings ("Board") finding him unsuitable for parole.  For the

23   reasons that follow, petitioner is not entitled to relief.  The Board's decision finding him

24   unsuitable for parole was supported by some evidence in the record.  Petitioner has not suffered a

25   violation of his due process rights, nor a breach of his negotiated plea agreement, as alleged in

26   his petition.

## II. BACKGROUND

Petitioner's offense was summarized at his 2007 Board hearing as follows:

> In the week preceding March 18, 1988, Camille Johnson, the victim, entered into a drug deal on credit with Devonne Johnson, co-defendant, and his girlfriend for purchase of three cocaine rocks worth $10.00 each, in exchange for $50.00 to be paid on March 18, 1988.
>
> Because the victim was late in payment, Devonne Johnson assembled a group called the Wrecking Crew to collect the debt and to burn the victim's hair.  After learning the victim was at home, Devonne Johnson and four other men, including [petitioner] and two juveniles, went to the victim's residence.  On arriving at the victim's residence, the five men entered and brutally beat the victim with their fists, sticks, and bats, and demanded the money.  After not finding any money in the victim's purse, the five men abducted the victim and forced her into the trunk of Perkins' car.  They drove around Oakland in [petitioner's] car for between ten and thirty minutes, threatening to kill the victim all the while before returning to the victim's residence.  While she was in the trunk of the car, the victim begged the men for more time to pay off the debt.  On returning to the victim's residence, the victim was released from the trunk.  However, as she started to walk away from the car, the men brutally knocked her to the ground and one fo the men broke her leg with a bat while the others beat her with fists and sticks.  Following the beating, one of the men poured gasoline on the victim's head and set it ablaze.  One of the men prevented the victim from removing her blouse which was on fire.  All five men then fled.  Neighbors ran to the victim's aid and extinguished the fire.  The victim was severely burned from her waist to her head and in addition, suffered a broken leg and finger.  After leaving the victim's residence, three of the five men, including Perkins, went to a female associate's apartment.  While there, Perkins admitted to "burning the bitch", stating "she deserved to burn."  The victim subsequently gave a description of the man who burned her which matched that of [petitioner].

(Exhibit A at 159-60.[1])

Petitioner was charged with five felony counts including burglary, attempted robbery, kidnap for ransom, kidnap for robbery, and attempted murder.  He was sentenced pursuant to a negotiated plea agreement whereby he received a total determinate term of ten

---

[1] All citations to exhibits refer to the exhibits attached to respondent's answer, filed 12/15/06.

2

1   years, four months, plus a consecutive sentence of life with the possibility of parole. (*Id*. at 8-

2   10.) Petitioner completed serving his determinate sentence on January 19, 1994 and began

3   serving his indeterminate life term the next day, on January 20, 1994. His minimum eligible

4   parole date passed on February 22, 2001.

5          On March 1, 2007, the Board held petitioner's third subsequent parole hearing.

6   At the hearing, petitioner admitted all facts as set forth above, except that he denied being the one

7   who poured gasoline on the victim. (*Id*. at 160.) Otherwise, he admitted full responsibility for

8   the crime, stating that he was a willful and active participant. (*Id*. at 161.) The Board found

9   petitioner unsuitable for parole.

10         Petitioner challenged the Board's decision in a petition for habeas corpus filed in

11  the Alameda County Superior Court. In a brief reasoned decision, the superior court concluded

12  that some evidence supported the Board's decision. (Exhibit B.) Petitioner subsequently filed

13  petitions in the California Court of Appeal and California Supreme Court; both were summarily

14  denied. (Exhibits D & F.)

15         In his application for writ of habeas corpus, petitioner asserts that the Board's

16  decision finding him unsuitable for parole violated his due process rights. He also asserts that his

17  contractual plea agreement has been breached by the Board's refusal to set a parole date. As set

18  forth below, neither allegation has merit.

19              III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

20         An application for writ of habeas corpus by a person in custody under judgment of

21  a state court can be granted only for violations of the Constitution or laws of the United States.

22  28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.

23  Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

24  This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

25  the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521

26  U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under

1  AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

2  state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

7  28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

8  *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

9  The court will look to the last reasoned state court decision in determining whether the law

10 applied to a particular claim by the state courts was contrary to the law set forth in the cases of

11 the United States Supreme Court or whether an unreasonable application of such law has

12 occurred.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919

13 (2003).

14                                IV.  DISCUSSION

15        A.     Due Process and Parole

16        The Due Process Clause of the Fourteenth Amendment prohibits state action that

17 deprives a person of life, liberty, or property without due process of law.  A person alleging a due

18 process violation must first demonstrate that he or she was deprived of a protected liberty or

19 property interest, and then show that the procedures attendant upon the deprivation were not

20 constitutionally sufficient.  *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60

21 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

22        A protected liberty interest may arise from either the Due Process Clause or from

23 state laws.  *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The United States Constitution

24 does not, in and of itself, create a protected liberty interest in a parole date.  *Jago v. Van Curen*,

25 454 U.S. 14, 17-21 (1981).  However, where a state's statutory scheme uses mandatory language,

26 it "'creates a presumption that parole release will be granted' when or unless certain designated

4

1   findings are made, and thereby gives rise to a constitutional liberty interest." *McQuillion*, 306

2   F.3d at 901 (*quoting Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)).

3           The Ninth Circuit has conclusively determined that California state prisoners who

4   have been sentenced to prison with the possibility of parole have a clearly established,

5   constitutionally protected liberty interest in receipt of a parole release date." *Irons v. Carey*, 505

6   F.3d 846, 850-51 (9th Cir. 2007) (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128

7   (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at

8   903; and *Allen*, 482 U.S. at 377-78 (*quoting Greenholtz*, 442 U.S. at 12)).   Thus, the issue for

9   consideration is whether petitioner was afforded adequate procedural protections before being

10  deprived of his parole release date.

11          B.      "Some Evidence" Standard

12          The full panoply of rights afforded a defendant in a criminal proceeding is not

13  constitutionally mandated in the context of a parole proceeding.  *See Pedro v. Or. Parole Bd.*,

14  825 F.2d 1396, 1398-99 (9th Cir. 1987).  The Supreme Court has held that a parole board's

15  procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a

16  decision informing him of the reasons he did not qualify for parole.  *Greenholtz*, 442 U.S. at 16.

17  The Ninth Circuit has also made clear that Supreme Court law clearly establishes that some

18  evidence must support a parole decision.  *Sass*, 461 F.3d at 1128-29; *McQuillion*, 306 F.3d at

19  904.

20          Petitioner does not contest that he received notice of his March 1, 2007 parole

21  hearing, an opportunity to appear, and a copy of the decision rendered by the Board.  Thus, the

22  only remaining issue is whether there was some evidence to support the decision.

23          Under the some evidence standard, a decision cannot be "without support" or

24  "arbitrary." *McQuillion*, 306 F.3d at 904 (*citing Superintendent v. Hill*, 472 U.S. 445, 457

25  (1985)); *Biggs*, 334 F.3d at 915.  It must have some indicia of reliability.  *Id*.  The standard is

26  "minimally stringent," and a decision must be upheld if there is any evidence in the record that

1  could support the conclusion reached.  *Powell v. Gomez*, 33 F.3d at 40 (*citing Cato v. Rushen*,

2  824 F.2d 703, 705 (9th Cir. 1987)); *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986).

3  Examination of the entire record is not required.  *Id*.  The Supreme Court has specifically

4  directed reviewing courts not to assess the credibility of witnesses or re-weigh the evidence.

5  *Hill*, 472 U.S. at 455.  The only relevant question is whether there is *any* reliable evidence in the

6  record that could support the decision reached.  *See Id*.; *Toussaint*, 801 F.2d at 1105.

7                C.      California Law on Parole Suitability Determinations

8                In evaluating whether the Governor's reversal of petitioner's grant of parole was

9  supported by some evidence, the analysis "is framed by the statutes and regulations governing

10  parole suitability determinations in the relevant state."  *Irons*, 505 F.3d at 851.  The  court "must

11  look to California law to determine the findings that are necessary to deem [a petitioner]

12  unsuitable for parole, and then must review the record to determine whether the state court

13  decision holding that these findings were supported by 'some evidence' [ ] constituted an

14  unreasonable application of the 'some evidence' principle."  *Id*.  This court is bound by

15  California's construction of its own laws in this regard.  *See Bradshaw v. Richey*, 546 U.S. 74, 76

16  (2005).

17                Title 15, Section 2281 of the California Code of Regulations sets forth factors to

18  be considered by the Board regarding parole suitability findings for life prisonerd.  The

19  regulation is designed to guide the Board's assessment of whether the inmate poses "an

20  unreasonable risk of danger to society if released from prison," and thus whether he or she is

21  suitable for parole.  *In re Lawrence*, 44 Cal.4th 1181, 1214, 1202 (2008).  The Board is directed

22  to consider all relevant, reliable information available regarding

23                    the circumstances of the prisoner's social history; past and present
                       mental state; past criminal history, including involvement in other
24                    criminal misconduct which is reliably documented; the base and
                       other commitment offenses, including behavior before, during and
25                    after the crime; past and present attitude toward the crime; any
                       conditions of treatment or control, including the use of special
26                    conditions under which the prisoner may safely be released to the

1    community; and any other information which bears on the
     prisoner's suitability for release.
2

3    Cal. Code Regs. tit. 15, § 2281(b).  The regulation also lists various circumstances that may tend

4    to show suitability or unsuitability for parole.  Cal. Code Regs. tit. 15, § 2281 (c) and (d).

5           Circumstances that may tend to show unsuitability for release are as follows: (1)

6    the offense was committed in an especially heinous, atrocious, or cruel manner; (2) previous

7    record of violence; (3) unstable social history; (4) the crime was a sadistic sexual offense; (5)

8    lengthy history of severe mental problems related to the offense; and (6) serious misconduct in

9    prison.  Cal. Code Regs. tit. 15, §2281(c).  Circumstances that may tend to show suitability for

10   parole are set forth as follows: (1) no juvenile record; (2) stable social history; (3) signs of

11   remorse; (4) significant stress as a motivation for the crime; (5) battered woman syndrome; (6)

12   lack of criminal history; (7) age; (8) understanding and plans for future; (9) positive institutional

13   behavior.  Cal. Code Regs. tit. 15, §2281(d).

14          The overriding concern in determining parole suitability is public safety and the

15   focus is on the inmate's *current* dangerousness.  *In re Lawrence*, 44 Cal. 4th at 1205.  Thus, "the

16   proper articulation of the standard of review is not whether some evidence supports the *reasons*

17   the Board cites for denying parole, but whether some evidence indicates that a parolee's release

18   *unreasonably endangers public safety*.  *See In re Lawrence*, 44 Cal.4th at 1254.

19          D.      The Board's Decision

20           The Board determined that petitioner would pose an unreasonable risk to public

21   safety if released from prison, and thus that he was unsuitable for parole.  While commending

22   him for his recent programming and educational achievements (Exhibit A at 248-49), the Board

23   expressed confusion about his stated involvement in the crime, because there were "two different

24   stories, and maybe three, about why the gasoline was in [petitioner's] trunk... Those are issues

25   we're going to need some resolution to."  (Exhibit A at 245.)  The Board concluded:

26   /////

1

2

3

4

5

6

7

So you have done a lot.  What you need to be working on this next
year is don't get any more 115s or 128s.  So distance yourself from
those.  Continue your self-help and your education as you have told
us you would, and move your goals forward.  Shore up those parole
plans so that they are the strongest for you possible.  Your gains are
recent, we're still not sure how much you are minimizing about
your participation in your commitment offense and your substance
abuse use, you need to be consistently involved in AA and I'm glad
to hear what you said today about your feelings about that, and I
agree with you... But I'm still concerned, we want to follow up
with some issues with regard to the psychological evaluation and
how you treat and feel about women.

8

9

10

(*Id*. at 249.)   All in all, the Board relied upon the following circumstances in finding petitioner

unsuitable for parole: (1) the nature of the commitment offense; (2) his history of violent

behavior and escalating criminal conduct; and (3) his institutional behavior.

11

12

13

14

15

16

17

18

19

20

Although the focus under California law is the current dangerousness of the

inmate, the gravity of the commitment offense alone can be a sufficient basis for denying parole

where the facts are especially heinous or particularly egregious.  *In re Rosenkrantz*, 29 Cal.4th

616, 682 (2002); s*ee also Biggs v. Terhune*, 334 F.3d 910, 913-16 (9th Cir. 2003); *Sass v. Cal.*

*Bd. of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006); *Irons v. Carey*, 505 F.3d 846, 852-53

(9th Cir. 2007).[2]  As set forth by the Alameda County Superior Court, petitioner's victim was

tortured and abused during commission of the offense.  Overall, it is true that the offense was

committed in a manner that demonstrates an exceptionally callous disregard for human suffering.

This is one of the circumstances that the California legislature has determined may tend to show

unsuitability for release.  *See* Cal. Code Regs. tit. 15, §2281(b).

21

22

/////

23

24

25

26

[2] In another case, *Hayward v. Marshall* (512 F.3d 536, 546-47 (9th Cir. 2008), a panel of
the Ninth Circuit determined that under the "unusual circumstances" of that case, the unchanging
factor of the gravity of the petitioner's commitment offense did not, by itself, constitute some
evidence supporting the governor's decision to reverse a parole grant on the basis that the
petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Court of
Appeals vacated the decision in order to rehear it en banc.  *Hayward v. Marshall*, 527 F.3d 797
(9th Cir. 2008).  Therefore, the panel decision in *Hayward* is no longer citable precedent.

1     In order to rely on the circumstances of petitioner's offense as an unsuitability

2  factor for parole, however, there must be some rational nexus between those facts and the

3  ultimate conclusion that he continues to be a threat to public safety.  *In re Lawrence*, 44 Cal.4th

4  at 1214, 1227 ("the aggravated nature of the crime does not in and of itself provide some

5  evidence of *current* dangerousness to the public unless the record also establishes that something

6  in the prisoner's pre- or post-incarceration history, or [ ] current demeanor and mental state,

7  indicates that the implications regarding the prisoner's dangerousness that derive from his or her

8  commission of the commitment offense remain probative to the statutory determination of a

9  continuing threat to public safety") (emphasis in original).  The relevant inquiry is an

10 individualized one: "whether the circumstances of the commitment offense, when considered in

11 light of other facts in the record, are such that they continue to be predictive of current

12 dangerousness many years after commission of the offense."  *In re Lawrence*, 44 Cal.4th at 1221.

13 The passage of time and attendant changes in the inmate's psychological or mental attitude are

14 relevant considerations.  *Id*.

15     In this case, the Board did not rely solely on the commitment offense in finding

16 petitioner unsuitable for parole; it also cited his history of violent behavior (*see* Cal. Code Regs.

17 tit. 15, §2281(c)(2)), escalating criminal conduct, and institutional behavior (*see* Cal. Code Regs.

18 tit. 15, §2281(c)(2)(6).  As a juvenile, he was convicted of theft for knocking down a 62 year old

19 female in a purse snatching. (Exhibit A at 169.)  His disciplinary history while incarcerated

20 includes two 128 (minor) disciplinary reports received in the 1990s, and two more recent 115

21 (major) disciplinary reports received in November and December of 2003.  (*Id*. at 166-67.)  The

22 115 disciplinary reports received in 2003 were for unauthorized business activity and possession

23 of contraband (cards depicting explicit sexual images).  (*Id*. at 167.)  Petitioner was caught

24 attempting to start a pornography business; he had solicited friends and relatives on the outside to

25 find models to pose for photographs which he intended to distribute within the institution.  (*Id*. at

26 199-204.)  The Board characterized this offense as "extremely serious" (*Id*. at 250) and found it

1  "troubling" that petitioner still claimed he had not understood that his actions were against

2  institutional rules.  (*Id*. at 251.)  Based on the commitment offense (which involved a female

3  victim), petitioner's prior offense (which also involved a female victim), and the attempted

4  pornography business, the Board questioned petitioner's attitude and actions towards women:

> [Another issue is] the fact of how you deal with women.  You had
> a 62 year old victim, you had very vulnerable victim in the current
> commitment offense, and what's this whole deal about
> pornographic business?  And the first words out of your mouth to
> us today at one point along was "most of the letters I got were from
> women."  Something's going on there and we want it checked out.

9  (Exhibit A at 247.)

10       The Board also noted that many of petitioner's gains were relatively recent.  He

11  had been discipline free for a few years but had received his last two major disciplinary reports as

12  recently as 2003.  The bulk of his self-help programming was completed in the two years

13  immediately prior to the hearing.  (Exhibit A at 220, 223.)  He had participated continuously in

14  AA and NA for only a short time, having denied that he even had a substance abuse problem

15  until sometime after 2004.  (Exhibit A at 223.)  The Board concluded that petitioner needed more

16  time to get substance abuse treatment, solidify his recovery, and "make sure that this time he is

17  serious and that it does stick."  (Exhibit A at 223-24.)

18       Under the minimally stringent some evidence standard, only a modicum of

19  reliable evidence of petitioner's unsuitability is required.  Based on the foregoing, that modicum

20  is present in this case.  There is some evidence to support the Board's conclusion at petitioner's

21  2007 hearing that, if released, he would pose an unreasonable risk to public safety based, in part,

22  on the heinous and cruel nature of his commitment offense, in conjunction with his history of

23  violent behavior, escalating criminal conduct, and his more recent institutional behavior.  The

24  Board's decision finding him unsuitable for parole is supported by some evidence in the record.

25  /////

26  /////

1               E.       Plea Agreement

2               Petitioner's additional allegations that the Board's decision breached his

3 negotiated plea agreement are without merit.  (Petition at 5-1.)  He claims that the Board is not

4 allowed to rely on "facts not admitted as part of the [plea] agreement" (petition at 5-1) in its

5 parole suitability decision.  He also sets forth that prior to the trial court's approval of his

6 negotiated plea agreement and sentencing, his trial counsel stated "hopefully, Mr. Perkins will do

7 his time and be out as soon as possible on this, Your Honor.[3]"  (Petition at 5-3, 5-4.)

8               A plea agreement is between the prosecutor and defendant, subject to acceptance

9 by the court.  *Brown v. Poole*, 337 F.3d 1155, 1159-60 (9th Cir. 2003).  Any promises in regard

10 to future parole proceedings would have been unlawful, since the prosecutor was without

11 authority to usurp the prerogative of the parole authority.  *See United States v. Anderson*, 970

12 F.2d 602, 608 (9th Cir. 1992), as amended on denial of rehearing, 990 F.2d 1163 (9th Cir. 1993)

13 ("The agreement seemingly contemplates either limiting the information made available to the

14 parole board or dictating the action to be taken by the parole board in a particular case.  Either

15 course frustrates the Parole Commission's duty to determine when release is appropriate for a

16 particular defendant.").  In any event, petitioner's allegations in this regard have failed to show

17 that his negotiated plea agreement was conditioned in any way upon a favorable parole decision

18 or a limitation of the facts to be considered by the Board.  *See generally Silva v. Woodford*, 279

19 F.3d 825, 835 (9th Cir. 2002) (petitioner's burden to show he is in custody in violation of the

20 Constitution).  Petitioner is not entitled to relief.

21                        V.  CONCLUSION

22               For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

23 application for a writ of habeas corpus be denied.

24 /////

25 _____

26           [3] There was no response from the prosecutor or the judge to trial counsel's statement.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 26, 2009

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE